**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-1081-WJM

NORMAN DUMANE WILLIAMS,

     Petitioner,

v.

DEAN WILLIAMS, *Director*, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

     A state-court jury found Petitioner Norman Dumane Williams guilty of second-degree murder for stabbing a woman to death in her apartment. Petitioner brings this habeas corpus action under 28 U.S.C. § 2254 to collaterally challenge the conviction. His habeas application presents five claims for relief. The parties have submitted briefs to address the merits of each claim. (ECF Nos. 14, 19).[1] After reviewing the application, the briefs, and the state-court record, no basis for habeas relief has been shown. The Court therefore rejects each of Petitioner's claims on the merits and denies the habeas application.

## I.    STANDARDS OF REVIEW

     "The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a

---

1 Petitioner has also filed a *Motion to Supplement Record* (ECF No. 18), which will be denied as moot. The transcripts, brief, and order requested by Petitioner have been submitted as part of the state-court record. (ECF No. 15).

1

prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)). Petitioner's claims were adjudicated on the merits in state court. As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.    BACKGROUND

In addressing Petitioner's postconviction appeal, the Colorado Court of Appeals (CCA) summarized the state proceedings as follows:

> According to the prosecution's evidence at trial, defendant stabbed the victim to death in her kitchen. Bloody footprints led from the kitchen to the bedroom, where she usually kept a supply of illegal drugs. The victim's body was found on her kitchen floor on November 24, 2008, and the coroner determined that she had been dead for more than one day and less than

2

one week.

DNA consistent with defendant's DNA profile was found inside the victim's apartment in areas where the victim's blood was also present, including on an exterior door knob, an interior light switch, on multiple spots on the kitchen counter, on the oven door in the kitchen, on the TV set in the hallway leading to the bedroom, on a bloody footprint on the carpet in the victim's bedroom, on the victim's dresser in the bedroom, and under the fingernails of both of the victim's hands.

A smear of blood was found on the comforter on the victim's bed, where it appeared the killer wiped the victim's blood from a knife. Defendant's DNA was not found on the comforter, but DNA analysis from the comforter resulted in a mixed profile that included an unidentified male.

Defendant was related to the victim by marriage, and evidence at trial showed that he had bought drugs from her in the past. Defendant admitted to police that several days before her body was found, his van ran out of gas and he was in the parking lot at the victim's apartment complex. He denied to police that he had gone inside the victim's apartment, but when told that his DNA was found inside, he stated that he had been inside to smoke or purchase drugs.

Defendant was charged with first degree murder. His theory at trial was that he was innocent, and that the unknown male whose DNA was on the comforter was the killer.

The jury found defendant guilty of second degree murder. The trial court sentenced him to forty-eight years in prison. A division of this court affirmed his conviction on direct appeal. *People v. Williams*, (Colo. App. No. 10CA1838, June 27, 2013) (not published pursuant to C.A.R. 35(f)).

Defendant then filed a timely Crim. P. 35(c) motion alleging ineffective assistance of trial and appellate counsel. The trial court denied the ineffective assistance of appellate counsel claim by written order but held an evidentiary hearing on the ineffective assistance of trial counsel claims. Following the hearing, the court denied the motion.

(ECF No. 8-3 at 2-4). The CCA ultimately affirmed the denial of Petitioner's ineffective assistance claims. (*Id.* at 13).

After the state proceedings ended, Petitioner initiated this habeas corpus action on April 16, 2021. (ECF No. 1). On April 23, 2021, the parties were ordered to address

the procedural defenses of timeliness and exhaustion of state remedies. (ECF No. 5).

Respondents filed a *Pre-Answer* response conceding that Petitioner's claims were

timely and exhausted. (ECF No. 8). Accordingly, Respondents were ordered to file an

answer addressing the merits of Claims 1-5, with Petitioner ordered to file a reply. (ECF

No. 10). The claims are now fully briefed. As such, the Court will review the merits of the

following claims:

1.     Insufficient evidence to support Petitioner's conviction for second-degree

murder (ECF No. 1 at 5-6);

2.     Trial counsel was constitutionally ineffective for not requesting that DNA

samples from unidentified males be tested or run through the FBI's Combined DNA

Index System (CODIS) (*id.* at 7);

3.     Trial counsel was constitutionally ineffective by not adequately

investigating an alibi defense (*id.* at 7-8);

4.     Trial counsel was constitutionally ineffective for not consulting with a "DNA

scientist" (*id.* at 8-9); and

5.     Appellate counsel was ineffective for not asserting a constructive

amendment claim on direct appeal (*id.* at 9-11).

As relief, Petitioner requests that the Court grant either a conditional or

unconditional writ of habeas corpus. (*Id.* at 13).

Respondents contend the CCA's resolution of each claim was not contrary to, or

an unreasonable application of, clearly established federal law, which bars habeas relief

under § 2254(d)(1). (*See* ECF No. 14). Nor were the CCA's factual findings

unreasonable, making relief unavailable under § 2254(d)(2). (*Id.*). Petitioner maintains

4

the state criminal proceedings violated his constitutional rights, requiring habeas relief. (*See* ECF No. 19). The Court will now discuss each claim.

## III. DISCUSSION

### A. Claim 1: Sufficiency of the evidence.

Petitioner first claims that the prosecution presented insufficient evidence for the jury to find him guilty beyond a reasonable doubt of second-degree murder. (ECF No. 1 at 5-6; ECF No. 19 at 2-3; ECF No. 19-1 at 15-21). To support the claim, Petitioner attaches the opening appellate brief submitted to the CCA on direct appeal—in other words, he reasserts arguments considered and rejected by the CCA. (*See* ECF No. 19-1). Respondents contend that AEDPA bars relief because the CCA's denial of the claim was not contrary to, or an unreasonable application of, binding Supreme Court precedent. (ECF No. 14 at 10-19). The Court will recount why the CCA denied the claim, and then address whether § 2254 provides any basis for habeas relief.

### 1. CCA's denial of the claim.

The CCA concluded that sufficient evidence was presented for the jury to find Petitioner guilty of second-degree murder. The CCA's thorough explanation follows:

> ## II. Sufficiency of the Evidence
> Defendant first contends that the evidence presented at trial was insufficient to sustain a guilty verdict beyond a reasonable doubt. We disagree.
>
> ### A. Standard of Review
> We review the record de novo to determine whether the evidence before the jury is sufficient in both quantity and quality to sustain the defendant's conviction. *People v. Luna*, 2013 COA 67, ¶ 7 (citing *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).
>
> We employ the substantial evidence test to determine if the evidence presented to the jury is sufficient to sustain a conviction. *Clark*, 232 P.3d at 1291 (citing *People v. Bennett*, 183 Colo. 125, 131, 515 P.2d 466, 469

(1973)). The substantial evidence test considers "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *Bennett*, 183 Colo. at 130, 515 P.2d at 469.)

The pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (emphasis added). It does not matter that, were we the trier of fact, we might have reached a different conclusion. *Id.*

In applying the substantial evidence test, we must give the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence. *People v. Perez*, 2013 COA 65, ¶ 10; *Clark*, 232 P.3d at 1292. However, presumption and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference. *Perez*, ¶ 10.

If the evidence is such that reasonable jurors must necessarily have a reasonable doubt, then the evidence is insufficient to sustain a conviction. *Clark*, 232 P.3d at 1292 (emphasis added) (citing *Bennett*, 183 Colo. at 132, 515 P.2d at 470). Merely a modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt and a criminal verdict may not be based on "guessing, speculation, or conjecture." *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983) (quoting *People v. Urso*, 129 Colo. 292, 297, 269 P.2d 709, 711 (1954)); *see also Perez*, ¶ 11.

Reasonable doubt is "a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence . . . . It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves." *People v. Robles*, ___ P.3d ___, ___ (Colo. App. No. 06CA0934, Mar. 31, 2011) (quoting COLJI-Crim. 3:04 (1993)).

## B. Application

A person commits the crime of murder in the second degree if he knowingly causes the death of another person. § 18-3-103(1), C.R.S. 2012.

Defendant asserts that the evidence presented at trial was insufficient to sustain his conviction because it rests almost solely on the explained presence of his DNA in the victim's apartment, while there was also unidentified and unexplained male DNA recovered therefrom. We conclude

there is sufficient evidence from which the jury could find defendant knowingly caused the death of the victim beyond a reasonable doubt.

During trial, the jury heard evidence regarding two types of DNA testing: autosomal DNA and Y-STR DNA. The prosecution's DNA expert testified that autosomal DNA can be traced to a specific individual, while Y-STR DNA is unique to males and can be traced to a suspect and all of his paternal male blood relatives. The expert also stated that autosomal DNA testing analyzes thirteen loci in the DNA pattern and Y-STR DNA testing analyzes seventeen loci in the DNA on the Y-chromosome. Both tests are limited by the quality of the DNA sample at the crime scene, and not all samples can be tested at multiple loci.

The expert witness who conducted the DNA testing found the victim's DNA in all the tested blood stains in the apartment and found defendant's DNA profile in blood stains throughout the apartment. No evidence was presented that any of defendant's paternal male relatives were ever in the victim's apartment.

The expert testified to the following results which, taken in the light most favorable to the prosecution, support defendant's conviction:

- In autosomal testing, at thirteen of thirteen loci, defendant's DNA matched a blood stain on the exterior door knob of the victim's front door. Defendant was the major contributor to the DNA sample, the victim being only a minor contributor. No male DNA, besides defendant's, was found at this location;
- In Y-STR testing, at seventeen of seventeen loci, defendant's DNA and that of all his paternal male blood relatives matched a blood stain on the interior light switch by the victim's front door. Besides the DNA attributable to defendant and that of his paternal male blood relatives, no male DNA was found at this location;
- In an autosomal DNA test, defendant's DNA matched a blood stain on the kitchen counter at eight of thirteen loci, meaning that over 99 percent of the population was excluded from contributing to this sample, including other suspects considered during the investigation. No male DNA, besides defendant's, was found at this location;
- Defendant's DNA and that of all his paternal male blood relatives matched, in Y-STR testing, two blood stains on the kitchen counter at ten of seventeen loci. No male DNA was found at this location besides that of defendant and his paternal male blood relatives;

- Defendant's DNA and that of all his paternal male blood relatives matched, in Y-STR testing at fourteen of seventeen loci, a blood stain on the oven door. No male DNA was found at this location besides that of defendant and his paternal male blood relatives;

- In autosomal testing, defendant's DNA matched, at five of thirteen loci, a blood stain found on the TV set in the hallway leading to the victim's bedroom. In Y-STR testing, defendant's DNA and that of all his paternal male blood relatives matched, at seventeen of seventeen loci, the stain on the TV set. No male DNA was found at this location besides that of defendant and his paternal male blood relatives;

- Defendant's DNA could not be excluded, based on autosomal testing, from a bloody footprint found on the carpet in the victim's bedroom, while over 99.9 percent of the population could be excluded. In Y-STR testing, defendant's DNA and that of all his paternal male blood relatives matched the bloody footprint at all seventeen loci. No male DNA was found at this location besides that of defendant and his paternal male blood relatives;

- Defendant's DNA and that of all his paternal male blood relatives matched, in Y-STR testing, a blood stain on the victim's dresser located in her bedroom. No male DNA was found at this location besides that of defendant and his paternal male blood relatives;

- Defendant's DNA and that of all his paternal male blood relatives matched, in Y-STR testing at seventeen of seventeen loci, DNA under the victim's fingernails of both her left and right hands. Defendant's DNA was one of two male samples found under the victim's fingernails, with defendant's DNA being the "major contributor" to the sample, meaning that more of defendant's DNA was present than another male's DNA;

- Defendant's DNA could not be excluded from the mixture of DNA found in a blood stain on the interior door knob of the victim's front door, while over 99 percent of the population could be excluded from this sample. Other male suspects were excluded from this sample;

- The DNA of a potential suspect, J.J., did not match any of the DNA samples from the victim's apartment.

We acknowledge, as defendant points out, that his DNA was not found in or around the blood stains on the victim's bedspread. Instead, DNA of an unidentified male was found on the victim's bedspread in what investigators testified could have been the area where the killer wiped the victim's blood from the knife. Further, defendant's DNA was not found in some places within the apartment, his DNA was found mixed with other male DNA, and

the expert could not conclude beyond a reasonable doubt when or how (blood, saliva, etc.) defendant left his DNA at the crime scene.

In addition, defendant was able to explain the quantity of his DNA in the apartment through innocent transfers. Defendant was related to the victim through marriage and had been in her apartment on several occasions and argued that was how his DNA came to be in so many different areas of the victim's apartment. He proposed that "the most likely" source of the DNA matching himself and all of his paternal male blood relatives under the victim's fingernails was his sharing of a blunt with the victim weeks before the murder.

Defendant also emphasized the single fingerprint found in the victim's apartment. The print found on the kitchen faucet belonged to J.J., who had told police he was the last person to see the victim alive.

But the jury also heard evidence of defendant's contradictory stories to law enforcement. As police confronted defendant with new forensic evidence, he modified his story. When defendant was told that his DNA was found in the victim's apartment, he first stated that he and his stepson (not a blood relative) had been to the victim's apartment to buy marijuana "way before the murder" and had stood in her front doorway. Later, in the same interview, defendant admitted to being in victim's apartment after working on her car, and acknowledged that he could have deposited his DNA through a cut finger. Still later in the interview, defendant admitted that he had been in the doorway of the victim's bedroom and had reached into the doorway to get drugs from her.

In his prior statements, defendant maintained that his DNA would not be found inside the victim's bedroom. But as noted above, the jury heard that DNA matching defendant and all of his paternal male blood relatives was found in a bloody footprint in the victim's bedroom and on a blood stain on her dresser, in addition to numerous other locations in the apartment and under the victim's fingernails.

The quality and quantity of DNA matching defendant and/or all of his paternal male blood relatives, combined with the lack of DNA from other potential suspects and defendant's contradictory statements to police regarding his presence in the victim's apartment, is sufficient evidence such that a rational trier of fact could have found the prosecution proved all the necessary elements of murder in the second degree. *See Clark*, 232 P.3d at 1291. The evidence presented at trial does not require inference to be built upon inference in order to find defendant guilty beyond a reasonable doubt. *See Perez*, ¶ 10. The weaknesses in the DNA evidence neither exculpate defendant nor render the evidence insufficient to support a guilty

verdict.

Further, concerning the potential suspect J.J., the jury could have found that the evidence at trial showed that J.J. was not the last person to see the victim alive and that he could not have been the murderer because his DNA was not found in any of the samples in the victim's apartment, and a drop of blood was on top of J.J.'s fingerprint, indicating that the fingerprint was there before the murder occurred.

In sum, the evidence is sufficient.

(ECF No. 8-2 at 6-16).

> 2.  *Application of § 2254.*

The federal standard for evaluating a claim challenging the sufficiency of evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16). To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v.*

*Boone*, 468 F.3d 665, 673 (10th Cir. 2006). The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.* The Court is "required to defer to any determination of factual issue by the state court due to the presumption of correctness afforded by § 2254(e)," unless Petitioner overcomes that presumption with "clear and convincing evidence." *Id.*

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman*, 566 U.S. at 651. "First, on direct appeal, it is the responsibility of the jury – not the [state] court – to decide what conclusions should be drawn from the evidence admitted at trial." *Id.* (internal quotation marks omitted). Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks omitted).

The CCA applied *Jackson* in an objectively reasonable manner when it rejected Petitioner's sufficiency-of-the-evidence claim. The Court has carefully reviewed the state-court record, and finds the CCA's summary of the evidence supported by the record. (ECF No. 15, May 27, 2010, Trial Tr. at 6-57; *see also* People's Ex. 74, Interview on Dec. 1, 2008; People's Ex. 76, Interview on July 29, 2009). When viewing that evidence as a whole, and in the light most favorable to the prosecution, the CCA reasonably concluded that a rational trier of fact could have found that Petitioner knowingly caused the death of the victim in violation of Colo. Rev. Stat. § 18-3-103(1). The DNA evidence, coupled with Petitioner's shifting stories to law enforcement, was

11

sufficient evidence for a jury to find Petitioner guilty beyond a reasonable doubt of second-degree murder.

Petitioner disagrees with the jury's verdict and points to conflicting evidence— mainly that unidentified male DNA profiles were found in the victim's apartment, and that Petitioner offered innocent explanations for why his DNA was found in the apartment. Petitioner's arguments and testimony may undermine the state's evidence to some limited extent. But such arguments and testimony were presented to, and rejected by, the jury. It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. That the jury weighed the evidence in a manner contrary to Petitioner's arguments here is not a ground for habeas relief.

The Court therefore finds that under §§ 2254(d)(1) and (d)(2) the CCA got the facts correct and properly applied those facts to the law. Thus, Claim 1 will be denied.

### B.  Claims 2, 3, 4, and 5: Ineffective assistance of trial and appellate counsel.

Petitioner's four remaining claims argue that trial counsel (Claims 2, 3, and 4) and appellate counsel (Claim 5) provided ineffective assistance. A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Petitioner must demonstrate both deficient performance and that counsel's deficient performance resulted in prejudice to his defense. *Id*. at 687. If Petitioner fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *Id*. at 697. In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is "a strong presumption" that counsel's

performance falls within the range of "reasonable professional assistance." *Id*. It is Petitioner's burden to overcome this presumption by showing the alleged errors were not sound strategy under the circumstances. *See id*.

The challenge of demonstrating counsel was ineffective is even greater for a state prisoner seeking federal habeas corpus review under § 2254(d). *See Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id*. (internal quotation marks and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id*. "The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard." *Id*. (citations and internal quotes omitted). "And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard." *Id*. Put simply, deference to the state court is "near its apex" when a state prisoner's habeas petition involves a *Strickland* claim. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (per curiam).

Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Petitioner has established prejudice, the Court

must look at the totality of the evidence and not just the evidence that is helpful to Petitioner. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

The *Strickland* standard also governs ineffective assistance of appellate counsel claims. *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue[.] If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Id.* (citation and internal quotation omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" *Smith v. Robbins,* 528 U.S. 259, 285 (2000) (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) ("Absent counsel's omission of an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims.").

***Claim 2.*** This claim faults trial counsel for not having six DNA profiles containing unidentified male DNA submitted to the FBI's CODIS database. (ECF No. 1 at 7). The Court will set forth the CCA's resolution of the claim, and then discuss whether the requirements of § 2254 have been met.

    *1.   CCA's resolution.*

The CCA rejected this claim, finding Petitioner had failed to establish prejudice under *Strickland*:

> At trial, counsel argued that the case presented more questions than answers, and that the unknown male who left his DNA on the comforter when he wiped the knife was the "real killer."

14

> In support of his argument that counsel was ineffective, defendant asserts that had the DNA been run though the CODIS system, the information could have supported an alternate suspect defense. But he can only speculate that the CODIS system would have returned the name of a known individual, and that the jury would have found that name more compelling than the presence of an unknown male's DNA. *See People v. Pendleton*, 2015 COA 154, ¶ 34 ("[T]he mere possibility that additional investigation would have revealed useful information does not establish ineffective assistance.").
>
> Under these circumstances, we cannot conclude that defendant has shown prejudice.

(ECF No. 8-3 at 8-9).

### 2. *Application of § 2254.*

Respondents contend the CCA applied *Strickland* in a reasoned manner, so habeas relief is unavailable under § 2254(d)(1). (ECF No. 14 at 24-26). The Court agrees.

Petitioner's application and reply continue to take issue with counsel's failure to have the DNA evidence tested. But counsel's underlying performance is not the question before this Court. "The pivotal question [on federal habeas review] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Richter*, 562 U.S. at 101. To obtain habeas relief, Petitioner must show that the CCA's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). He cites no authority to make that showing.

Petitioner also renews his argument that the failure to test "was prejudicial as it deprived [him] of an alternate suspect defense." (ECF No. 19 at 5). But Petitioner still offers nothing more than speculation "that the CODIS system would have returned the

name of a known individual, and that the jury would have found that name more compelling than the presence of an unknown male's DNA." (ECF No. 8-3 at 8). Speculation about prejudice is insufficient. *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("mere speculation is not sufficient" to demonstrate prejudice under *Strickland*); *see also Weatherall v. Sloan*, 415 F. App'x 846, 849 (10th Cir. 2011) ("We conclude that the Colorado Court of Appeals's decision was not contrary to or an unreasonable application of federal law because [the petitioner] made no more than vague and conclusory allegations to support his conspiracy claim."). It should be noted that submitting the DNA evidence to CODIS could have backfired. Had the CODIS system identified the unknown male, and that person then be eliminated as the killer, it would have damaged Petitioner's defense. Consequently, the requirements for habeas relief have not been met and this claim will be denied.

*Claim 3.* Petitioner next argues that trial counsel rendered ineffective assistance by failing to investigate an alibi defense. (ECF No. 1). Specifically, Petitioner contends that counsel's failure to investigate this defense was based on a mistaken belief about the possible window for the victim's time of death: that an alibi was needed for a six-day timespan, instead of a 6-hour timespan. (*Id.*). The Court will recount the CCA's rejection of the claim, followed by a discussion § 2254.

### 1. CCA's rejection of the claim.

As noted, to prevail on a claim that trial counsel was ineffective for failing to conduct an adequate investigation of an alibi defense, the defendant must demonstrate that a more thorough investigation would have led to the discovery of substantial evidence. *See Chambers*, 900 P.2d at 1252. Among other things, the defendant must make some showing of who the potential witnesses might be, their willingness to testify, and the substance and credibility of their testimony. *Id.*

16

The trial court found that defendant failed to identify any witnesses who could have established an alibi. For example, defendant identified a female friend who he claimed could provide an alibi. But the female friend told trial counsel's investigator that defendant was lying. Defendant identified others, but conceded that it was unknown if they had any information for his defense, or that they had already testified on his behalf. And he identified an individual who was seen with the victim, but that person had been cleared of involvement by police.

The trial court also found that the time of death was unknown, and an alibi would have to cover a substantial period. Defendant disagrees, and contends that trial counsel was deficient for assuming an alibi would have to be developed for a six-day period. He asserts the victim likely died within a six-hour period encompassing November 18 and 19. But another witness believed he saw the victim on November 20.

Further, a memo by trial counsel indicated that her strategy was to shift the assumed time of death away from this date, when defendant was known to be in the parking lot at the victim's apartment. Trial counsel's testimony made clear that she could not provide an alibi for every "second" of the six days. And the trial court agreed that "an incomplete alibi is, frankly, more damaging than no alibi."

At any rate, defendant did not show that an alibi defense would have had any reasonable probability of succeeding. He does not identify what additional helpful information his attorney could have learned through an additional investigation, and there was no showing that his counsel could have discovered evidence that would have appeared credible or significant at trial.

Accordingly, we conclude that defendant was not entitled to postconviction relief based on his counsel's failure to present an alibi defense.

(ECF No. 8-3 at 9-11).

2. *Application of § 2254.*

The Court agrees with Respondents that the CCA's denial of this claim

reasonably applied *Strickland.* (ECF No. 14 at 26-29). In his traverse, Petitioner states

that he "will rely on his habeas application for essence of his remaining claims and

respectfully moves this Court for all relief available." (ECF No. 19 at 6).

As the CCA found, counsel made a reasonable strategic decision to shift the relevant timeframe of death away from the 6-hour window (a time Petitioner was known to be in the parking lot of the victim's apartment) to a 6-day timeframe (a timeframe that allowed counsel to pursue the alternate suspect theory). As to Petitioner's arguments that counsel should have investigated further, "[as] is always the case, trial counsel could have done more. But the question under *Strickland* is not whether counsel could have done more, but whether counsel's decision not to do more was '[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Turrentine v. Mullin*, 390 F.3d 1181, 1209 (10th Cir. 2004) (quoting *Strickland*); *Mora v. Williams*, 111 F. App'x 537, 550 (10th Cir. 2004) (unpublished) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.") (citation and internal quotation omitted). Petitioner questions counsel's underlying performance, but he points to nothing unreasonable with the CCA's denial of this claim. Habeas relief will accordingly be denied.

*Claim 4.* Petitioner's fourth claim contends that trial counsel provided ineffective assistance because she consulted with another attorney about the DNA evidence instead of a DNA scientist. (ECF No. 1 at 8-9). Trial counsel testified at a hearing held by the postconviction court. At the hearing, she explained her strategy and reasons for not consulting with a DNA scientist. The trial court denied Petitioner's postconviction motion after the hearing. The CCA affirmed the trial court's denial of this claim, summarizing the key points from counsel's testimony. The Court will recite the CCA's decision, and then apply § 2254.

18

*1.  CCA's decision.*

Generally, "[m]ere disagreement as to trial strategy will not support an ineffective assistance of counsel claim." *People v. McDowell*, 219 P.3d 332, 339 (Colo. App. 2009). Trial strategy includes decisions concerning what witnesses to call, whether and how to conduct cross-examination, and what motions to make. *Arko v. People,* 183 P.3d 555, 558 (Colo. 2008); *Davis v. People,* 871 P.2d 769, 773 (Colo. 1994) ("Whether to call a particular witness is a tactical decision, and, thus, a matter of discretion for trial counsel.").

Here, trial counsel explained that her decision not to utilize an expert witness was made after she consulted with a veteran defense attorney with expertise in DNA. Based on these discussions, she determined that there did not appear to be a basis for attacking the science or procedure used by the crime lab. Further, trial counsel determined that calling a defense expert could present a risk of compounding unfavorable evidence, including having to explain the amount of defendant's DNA on the light switch, which appeared to indicate that he was bleeding when he touched it.

Trial counsel testified that her strategy was to attack the prosecution's DNA evidence through cross-examination, and to emphasize an innocent explanation for defendant's DNA in the victim's apartment. The trial court found that it was a reasonable strategy and that trial counsel did an "extremely professional and effective" job in attacking the DNA evidence. Among other things, trial counsel cross examined the prosecution's expert witness who conceded that there was no way to tell if the DNA was deposited a day, week, or month earlier; that it was possible to find DNA in places where an individual had not been; that another male's DNA, and not defendant's, was on the comforter; that they could not prove that defendant was bleeding or that he was present when the victim was bleeding; and that it was possible that there were innocent explanations for the presence of DNA at a crime scene.

Under these circumstances, we agree with the trial court that defendant failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. at 689.

At any rate, defendant does not allege prejudice. He claims that an expert witness could have provided an innocent explanation for why defendant's DNA was found in the victim's apartment. But trial counsel was able to make this point in other ways. And defendant did not establish that consultation with an expert would have revealed "substantial evidence which, if introduced, might reasonably have led to a different result." *People v.*

*Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994). Accordingly, defendant has not shown prejudice.

Accordingly, the Court finds that the trial court did not err in denying this claim.

### 2.   Application of § 2254.

As Respondents argue, § 2254 does not provide an avenue for habeas relief here. (*See* ECF No. 14 at 29-34). The CCA applied *Strickland* in a reasonable manner because Petitioner failed to show deficient performance or prejudice.

Trial counsel explained her tactical decision for not retaining a DNA expert after she consulted with an experienced criminal defense attorney with DNA expertise. As part of her decision, trial counsel considered the risk of a DNA expert highlighting bad facts—specifically, "that if a different expert were called in . . .   he would have to say that . . . DNA [found inside the apartment on a light switch] came from [Petitioner's] blood." (ECF No. 15, Sep. 22, 2017 Hr'g Tr. at 38-40, 40). Counsel explained that it would have been bad for the defense because they were arguing "nothing happened [in the apartment] that would have caused him to bleed." (*Id.* at 39). The Supreme Court has "often explained that strategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). "Such decisions are particularly difficult because certain tactics carry the risk of 'harm[ing] the defense' by undermining credibility with the jury or distracting from more important issues." *Id.* (citation omitted). The same is true here. The decision not to retain a DNA expert was sound strategy for the reasons given by counsel, recounted by the CCA, and discussed above.

Nonetheless, Petitioner vaguely argues that consulting a DNA scientist "would

have supported the defense of an alternate suspect[.]" (ECF No. 1 at 9). But counsel was able to effectively present an alternate suspect theory in other ways, including cross-examination of the state's expert. Since counsel made the alternate-suspect arguments at trial, Petitioner does not explain how counsel's representation prejudiced him. *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) (rejecting ineffective assistance claim on prejudice prong where counsel's cross-examination of prosecution's expert witnesses "evidenced a sufficient understanding of the nature of the evidence against [defendant] and its potential weaknesses."). Petitioner points to nothing unreasonable with the CCA's decision denying this claim. Consequently, Petitioner is not entitled to habeas relief.

*Claim 5.* Petitioner's final claim asserts that appellate counsel provided ineffective assistance for failing to raise a constructive amendment claim as part of Petitioner's direct appeal. (ECF No. 1 at 9-11). He insists the trial court erred by instructing the jury on the lesser count of second-degree murder, and that appellate counsel should have raised the issue on appeal. (*Id.*). Petitioner further takes issue with the prosecutor's closing argument. (*Id.*). Specifically, Petitioner claims the prosecutor "constructively amended" the indictment by arguing that Petitioner was motivated to kill the victim because she refused to give him drugs. (*Id.* at 10). The Court will again set forth the CCA's rejection of the claim, followed by a discussion § 2254.

   *1.   CCA's rejection of the claim.*

A claim of ineffective assistance of appellate counsel may stem from allegations that counsel overlooked a meritorious argument that was more likely to succeed than the arguments presented. *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007).

Whether the prosecution is entitled to a jury instruction on a lesser, uncharged offense implicates a defendant's right to notice of the charges against him or her. *People v. Garcia*, 940 P.2d 357, 361 (Colo. 1997). "[T]he notice given must be sufficient to advise the accused of the charge, to give him a fair and adequate opportunity to prepare his defense, and to ensure that he is not taken by surprise because of evidence offered at the time of trial." *Id*. at 362 (quoting *People v. Cooke*, 186 Colo. 44, 46, 525 P.2d 426, 428 (1974)).

A defendant is presumed to have notice of the possibility of conviction on an offense if it is a lesser included offense of the crime charged. *Id*. at 362, 364 (as a matter of law, a defendant is given proper notice of a lesser included offense); *see People v. Rock*, 2017 CO 84, ¶ 9 (the prosecution may have the jury instructed on lesser included offenses not separately designated in the charging document). Thus, a lesser included offense may be submitted to the jury even over the defendant's objection. *Garcia*, 940 P.2d at 358-59.

Second degree murder is a lesser included offense of first degree murder. *See Brown v. People*, 239 P.3d 764, 767 (Colo. 2010). Therefore, instruction on this lesser included offense did not constitute a constructive amendment. *See People v. Duran*, 272 P.3d 1084, 1095 (Colo. App. 2011). Thus, appellate counsel was not ineffective for failing to raise the issue on appeal.

Finally, we reject defendant's argument that appellate counsel was ineffective for failing to argue that the prosecutor's closing arguments concerning heat of passion constituted a constructive amendment of the charges against defendant. A division of this court on direct appeal already determined that the prosecutor did not make a heat of passion argument or allege an act serious enough to provoke a sudden passion, but instead merely argued a theory about motive. Further, the division concluded that the trial court did not err in refusing defendant's proffered instruction on heat of passion. This is conclusive of the assertion.

(ECF No. 8-3 at 11-13).

###### 2. Application of § 2254.

Respondents argue that the CCA found the omitted appellate issues meritless under state law. (ECF No. 14 at 34-40). Because the issues were found meritless under state law, and determinations of state law are binding on a federal habeas court,

22

Petitioner lacks a basis for habeas relief on his ineffective assistance of appellate counsel claim. The Court agrees.

The CCA first explained that under Colorado law second-degree murder is a lesser included offense of first-degree murder. (ECF No. 8-3 at 12). And in Colorado, defendants are presumed to have notice of the possibility of conviction for a lesser included offense. (*Id.*). So, under state law, a lesser included offense may be submitted to the jury even if a defendant objects. (*Id.*). As to a heat of passion jury instruction, the CCA found on direct appeal that the second and third elements for heat of passion had not been established—specifically, the court found that the refusal to sell or give a person drugs would not provoke a reasonable person to kill. (ECF No. 8-2 at 27-31; ECF No. 8-3 at 13). The CCA concluded that the prosecutor's arguments regarding *motive* were insufficient to support the *provocation* element required for a heat of passion instruction. (ECF No. 8-2 at 30). As the CCA put it, "[p]rovocation and motive are not equivalent." (*Id.*). Of course, the elements and showings required for a heat of passion instruction present questions of Colorado criminal law.

But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Decisions that rest on matters of state law—including a state court's reading of its own criminal law—are binding on a federal court. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (explaining that matters of state law are binding on a federal habeas court).

There is no basis for concluding that counsel's performance was deficient

because this Court is bound to accept the CCA's conclusions that: (1) Petitioner had notice as a matter of state law that second-degree murder was a lesser included offense of first-degree murder; and (2) Petitioner failed to establish the elements for a heat of passion instruction under state law. Appellate counsel cannot be ineffective for failing to raise a meritless issue of state law. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [petitioner] could not demonstrate an error entitling him to relief."); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("if the issue is meritless, its omission will not constitute deficient performance.").

Given these circumstances, the CCA's rejection of this claim was not contrary to, or an unreasonable application of, federal law. Nor does Petitioner claim the decision was based on an unreasonable determination of the facts in light of the evidence presented. As such, habeas relief is not available.

## IV.    CONCLUSION

In sum, Petitioner points to nothing from the state-court proceedings that qualifies as the type of extreme malfunction in the state criminal justice system that § 2254 guards against. *See Richter*, 562 U.S. at 102.

The Court therefore

**ORDERS** that the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF No. 1) be DENIED and this case DISMISSED WITH PREJUDICE; and

**FURTHER ORDERS** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

**FURTHER ORDERS** that all pending motions be DENIED AS MOOT.


Dated this 23rd day of November, 2021.

BY THE COURT:

William J. Martínez
United States District Judge